**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SHARON LANGFORD, ) | CASE NO. 1:09-cv-1629 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE VECCHIARELLI |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION & ORDER** |
|    Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

     Plaintiff, Sharon Langford ("Langford"), challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying Langford's applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 423 and 42 U.S.C. § 1381(a). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

     For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

## I. Procedural History

Langford filed her application for SSI in August 5, 2005 alleging disability beginning April 3, 2002.[1]  Her application was denied initially and upon reconsideration. Langford timely requested an administrative hearing.

Administrative Law Judge ("ALJ"), Peter Beekman, held a hearing on August 4, 2008, at which Langford, who was represented by counsel, Hershel Goren, medical expert ("ME"), and Nancy J. Borgeson vocational expert ("VE") testified.  The ALJ issued a decision on October 16, 2008, in which he determined that Langford was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Langford filed an appeal to this Court.

On appeal, Langford claims that: (1) new and material evidence warrants remand pursuant to 42 U.S.C. § 405(g)(6); and (2) the ALJ erred in relying on the VE's testimony.  The Commissioner disputes these claims.

## II. Evidence

### A. Personal and Vocational Evidence

Langford was born on December 3, 1962.  (Transcript ("Tr.") 55).  Langford has a limited education and has past relevant work as a cleaner/housekeeper and collections clerk/phone solicitor.  (Tr. 24.)

---

[1] Langford amended her alleged onset date to August 5, 2005, the date of her application.  (Tr. 65).

2

**B. Medical Evidence[2]**

On November 15, 2005, Langford presented to MetroHealth Systems ("MetroHealth") complaining of leg pain.  Langford was assessed with probable sciatica for which home exercises and NSAIDs were prescribed.  (Tr. 176).  Langford returned for follow-up on November 22, 2005, complaining of ongoing leg pain radiating into her foot.  (Tr. 177-178).

On December 13, 2005, Langford presented to MetroHealth with continuing complaints of right buttock pain radiating to her ankle.  Langford was assessed with pain with L5 radiculopathy without improving symptoms.  (Tr.174).

On January 26, 2006, Langford presented to MetroHealth with a two month history of progressively worse right leg pain radiating into her foot.  Langford was prescribed a Medrol dose pack and Naproxen and referred for physical therapy.  (Tr. 173).  An X-ray of the lumbar spine taken the same day revealed slight scoliosis and minimal degenerative spondylolisthesis at L5-S1.  (Tr. 194).

On February 9, 2006, Langford returned to MetroHealth for follow-up.  Langford reported that she finished the Medrol dose pack for right sided sciatica, but her symptoms did not improve.  Langford was assessed with right sided sciatica and advised to continue her NSAID use and follow up with physical therapy.  (Tr. 172).

Langford presented for physical therapy on March 8, 2006 and March 23, 2006.  (Tr. 164, 168).

On April 8, 2006, Langford underwent an MRI of her lumbar spine.  The MRI

---

[2]Only evidence regarding Plaintiff's physical impairment is relevant to her appeal. Therefore, summary of the evidence is limited to this issue.

revealed disc degeneration in the lower lumbar spine particularly at L4-5 and L5-S1; somewhat asymmetric impingement on the right lateral recess due to facet hypertrophy; and some asymmetrical disc bulging to the right at the same level.  Mild diffuse disc bulging was noted at L4-5. (Tr. 383).

On July 13, 2006, Langford presented for follow-up.  The progress notes indicated the results of an MRI revealing mild lower lumbar degenerative changes with asymmetric impingement on the right lateral recess at L5-S1 in particular.[3]  The progress notes also indicated that Langford had longstanding lower back pain that had failed conservative therapy.  Langford was told that there was nothing else that could be done for her at that time, and that she was not a surgical candidate.  (Tr. 300).

On November 16, 2006, Langford presented to the spine clinic with continued complaints of low back pain.  Langford reported that she had failed all conservative measures including NSAIDS, physical therapy, and injections.  Langford was assessed with chronic back pain with a possible S1 component. (Tr. 318).

The ALJ issued his decision on October 16, 2008.  Thereafter, Langford filed new evidence with the Appeals Council consisting of progress notes from Dr. Deepak Reheja, a neurologist who examined Langford on February 18, 2009 and the results of an MRI performed on February 23, 2009.  (Tr. 422-423, 427-428).  Upon examination, Dr. Raheja noted that Langford had muscle spasms, tenderness, and positive straight leg raises.  Dr. Raheja's impression was lumbosacral radiculopathy, lumbosacral myofascitis, lumbar disc disease, and degenerative joint disease of the knees.  Dr. Raheja recommended that Langford avoid strenuous physical activity and ordered a

---

[3] The date of the MRI is not noted.

new MRI.  (Tr. 422-423).

The February 23, 2009 MRI revealed focal stenosis at L4-5 and a herniated disc at L5-S1.  (Tr. 427-428).

### C. Hearing Testimony

The ALJ asked the VE to consider a 45 year old female with a tenth grade education who: (1) can lift and carry 20 pounds occasionally and ten pounds frequently; (2) can stand, walk and sit for 15 minutes at a time; (3) has no limit on her ability to push, pull, or use a foot pedal; (4) can occasionally climb a ramp or stairs but can never use a ladder, rope, or scaffold; (5) has no manipulative, visual, or communications limitations; (6) should avoid high concentrations of smoke and fumes and should avoid unprotected heights; (7) should do no complex tasks but can do simple, repetitive tasks; (8) should do low stress work with no high production quotas, no piece work, no work involving arbitration, negotiation, or confrontation; (9) should have minimal interaction with the public, coworkers and supervisors; and (10) should have no work involving frequent changes in the work place or requiring long range planning.  (Tr. 459).  The VE testified that such an individual could perform the job of cleaner/ housekeeper.  (Tr. 460).

The ALJ then asked the VE to consider the same individual except that the individual can lift and carry only 10 pounds frequently and occasionally.  (Tr. 460).  The VE testified that such an individual could perform the job of order clerk, Dictionary of Occupational Titles ("DOT") number 209.567-014, for which there are approximately 400 jobs in northeast Ohio; 2,000 jobs in the state; and 48,000 jobs nationally.  The individual could also perform the job of general unskilled office work such as  charge

account clerk, DOT number 205.367-014, for which there are approximately 2,300 jobs in northeast Ohio; 11,500 jobs in the state; and 330,000 jobs nationally. (Tr. 461).

The ALJ then asked the VE whether her testimony conforms with the DOT and whether any of the positions listed by her are contrary to the DOT. The VE responded that her testimony conformed with the DOT, and that none of the jobs listed by her are contrary to the DOT. (Tr. 461).

Langford's counsel asked the VE to consider the same individual described in the ALJ's second hypothetical, but to add that the individual would be off task 25 percent of the day. The VE responded that such an individual would probably be unable to sustain full-time work of any kind. (Tr. 462).

In response to further questioning by Langford's counsel, the VE testified that some, but not all of the jobs she identified would require more than minimal interaction with others. She further testified that this requirement could decrease the number of available jobs, but she had no idea how many less jobs there could be because it depended on the work setting. (Tr. 462-463).

### III. Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and

resource limitations.  20 C.F.R. § 416.1100 and 20 C.F.R. § 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.   20 C.F.R. § 404.1520(d) and 20 C.F.R. §416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since August 5, 2005, the application date....
>
> 2. The claimant has the following severe impairments: disorders of the back discogenic and degenerative and depressive disorder NOS....
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1....
>
> 4. After careful consideration of the entire record, I find that the claimant

7

has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can only lift/carry 10 pounds occasionally and up to 10 pounds frequently.  She could stand/walk for 15 minutes at a time.  No limitations on push/pull foot pedals.  She can occasionally climb ramps or stairs, but never use ladders ropes or scaffolds.  She can frequently balance and occasionally stoop, kneel, crouch, and crawl.  She should avoid high concentrations of smoke and fumes.  She should avoid unprotected heights.  She can not do complex tasks, but can do simple repetitive tasks.  She can do low stress work, but no high production quotas work or piece work.  No work involving arbitration, negotiation or confrontation.  She should have minimal contact with co-workers, supervisors, and the public.  She should not have work involving frequent changes in the workplace.  She should not have any work requiring long term planning.

5. The claimant is unable to perform any past relevant work....

6. The claimant was born on December 3, 1962 and was 42 years old, which is defined as a younger individual age 18-44, on the date the application was filed....

7. The claimant has a limited education and is able to communicate in English....

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled....

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform....

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 5, 2005, the date the application was filed....

(Tr.19-21, 24-25).

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings

and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI.  Analysis

Langford claims that: (1) new and material evidence warrants remand pursuant to 42 U.S.C. § 405(g)(6); and (2) the ALJ erred in  relying on the VE's testimony.  The Commissioner disputes these claims.

### A. Remand Under 42 U.S.C. § 405(g)(6)

42 U.S.C. § 405(g)(6) provides in part:

> The court may ... at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

Accordingly, the court can remand a case for consideration of new evidence only where there is a showing that the evidence is new and material, and that there is good cause for the failure to include the evidence in the prior proceeding.  *Casey v. Sec'y of Health and  Human Servs*. 987 F.2d 1230, 1233 ( 6th Cir. 1993).  Evidence is considered new if it was, "not in existence or available to the claimant at the time of the administrative hearing." *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990).  Evidence is considered

9

material when there is a reasonable probability that the ALJ would have reached a different decision if the evidence had been presented.  *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 149 (6th Cir. 1990); *Sizemore v. Sec'y of Health and Human Servs.,* 865 F.2d 709, 711-712 (6th Cir. 1988).  The party seeking remand must demonstrate good cause for failing to obtain the evidence prior to the hearing.  *Cotton v. Sec'y of Health and Human Servs.,* 2 F.3d 692, 695 (6th Cir. 1993)  To demonstrate good cause the party seeking remand must provide a valid reason for failing to obtain the evidence prior to hearing.  *Oliver v. Sec'y of Health and Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986)  Finally, the party seeking the remand has the burden of demonstrating that the remand is appropriate.  *Willis v. Sec'y of Health and Human Servs.,* 727 F.2d 551, 554 (6th Cir. 1984)

In the instant case, Langford argues that this case should be remanded for review of  Dr. Rajeha's February 18, 2009 opinion and the February 23, 2009 MRI results.  Dr. Rajeha's opinion and the MRI post-date the ALJ's decision by approximately four months.  Thus, the evidence is new insofar as it did not exist at the time of the hearing.  However, the fact that it did not exist at the time of the hearing does not, in and of itself, establish good cause for failing to present the evidence.  *Oliver v. Sec'y of Health and Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986) (this circuit has taken a harder line on the good cause test than simply relying on the age of the evidence).  Langford has offered no explanation as to why she was not able to see Dr. Rajeha or obtain an additional MRI prior to the administrative hearing.  Thus, Langford has failed to establish good cause failing to present the evidence at the hearing.

Additionally, Langford has failed to establish that the evidence is material.

Evidence is material when it concerns the claimant's condition prior to the ALJ's decision and there is a reasonable probability that the ALJ would have reached a different decision if the evidence had been presented.  *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 149 (6th Cir. 1990); *Sizemore v. Sec'y of Health and Human Servs.,* 865 F.2d 709, 711-712 (6th Cir. 1988); *Oliver v. Sec'y of Health and Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986).  Neither of these conditions has been met in this case.

The report and MRI evidence Langford's condition at the time they were rendered, but they do not illuminate Langford's condition prior to the ALJ's decision.  Moreover, while the evidence may demonstrate a deterioration of Langford's condition since the time of the hearing, a deterioration of her condition is not material, and therefore does not warrant remand.  *See Wyatt v. Sec'y of Health and HumanServs.,* 974 F. 2d 680, 685 (6th Cir. 1992) ("evidence of subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.") (citations omitted); *Sizemore v. Sec'y of Health and Human Servs.,* 865 F.2d 709, 712 (6th Cir. 1988). ("reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition.")  (citations omitted) *See also, Oliver v. Sec'y of Health and Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986).

Finally, Langford has failed to establish that there is a reasonable probability that the ALJ would have reached a different conclusion if he had been presented with this evidence.  While the evidence may have provided additional objective evidence as to the nature and severity of Langford's symptoms, it does not provide support for any additional functional limitations.  Indeed, the only functional limitation recommended by

11

Dr. Raheja was that Langford avoid strenuous physical activities.  The ALJ's RFC, which limits Langford to less than a full range of sedentary work, is consistent with Dr. Raheja's recommendation.  Thus, Langford has failed to establish a reasonable probability that the ALJ would have reached a different conclusion.

### B. The Vocational Expert's Testimony

Langford argues that the ALJ erred in relying on the VE's testimony because the ALJ failed to resolve a conflict between the VE's testimony and the DOT as required by Social Security Ruling 00-4p[4] .  Specifically, Langford alleges that the jobs cited by the VE require capabilities beyond those listed by the ALJ in his hypothetical question.  Even if Langford were correct regarding the existence of a conflict, her argument nevertheless fails because she did not bring the conflict to the ALJ's attention.  *Martin v. Comm'r Social Security,*170 Fed. Appx.369, 2006 WL 509393, *5 (C.A. 6(Ohio)) (because claimant did not bring conflict to attention of ALJ, ALJ need not explain how conflict resolved; ALJ specifically asked if conflict existed and VE testified that it did not.); Ledford v. Astrue, 311 Fed. Appx 746, 757 (6th Cir. 2008) (nothing in Social Security regulations requires ALL to conduct investigation into VE testimony to determine accuracy, especially when claimant fails to bring conflict to ALJ's attention.); *See also,* Street v. Comm'r Social Security 2010 WL 1347602, *7 (E.D. Mich.) ("In this Circuit, Social Security Ruling 00-4p is satisfied ... by ALJ simply asking the VE if his testimony is consistent with the DOT").

---

[4] SSR 00-4p provides that when there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support his decision.

12

In the instant case, the ALJ asked the VE whether her testimony conforms with the DOT and whether any of the positions listed by her are contrary to the DOT.  The VE responded that her testimony conformed with the DOT and that none of the jobs listed by her are contrary to the DOT.  If Langford believed that the VE's testimony was incorrect, she should have brought it to the attention of the ALJ at that time.  Having failed to do so, the ALJ was under no obligation to inquire further into the accuracy of the VE's testimony.

Langford also argues that the ALJ erred in relying on the VE's testimony regarding the number of available jobs.  The VE testified that there were approximately 378,000 jobs nationally that Langford could perform.  She further testified that some of the jobs identified may require more than minimal interaction with coworkers, but she could not specify how many because the job duties were specific to each employer.

Langford argues that this potential decrease in the number of available jobs undercuts the VE's testimony such that it cannot constitute substantial evidence to support the ALJ's decision.  Langford's argument is without merit.  First, Langford overstates the VE's testimony.  The VE did not concede that there is often more than minimal contact with coworkers and that the number of jobs would be less than she previously stated.  She testified that *perhaps* some, but certainly not all jobs would require more than minimal contact with coworkers, and that, *if* they did, it *could* decrease the number of available jobs.  Regardless, Langford had the opportunity to further develop this testimony at the hearing and failed to do so.  She cannot now seek remand for further clarification.

It is within the province of the ALJ to determine the VE's credibility.  *Sais v.*

*Secretary of Health and Human Services,* 861 F.2d 475, 480 (6th Cir. 1988).  Further, the ALJ's credibility findings are entitled to substantial deference upon review.  *King v. Heckler,* 742 F.2d 968 (6th Cir. 1984).  In this case, the VE's answers were given in response to a hypothetical question that accurately portrayed Langford's impairments.  Thus, the ALJ could justifiably rely on the VE's conclusions.  *See Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 781 (6th Cir. 1987); *Marziarz v. Secretary of Health and Human Services,* 837 F.2d 240 (6th Cir. 1987).  Moreover, Langford's attorney had ample opportunity to, and did, cross-examine the VE at the hearing.  Accordingly, the ALJ properly relied on the VE's testimony, and his decision is supported by substantial evidence.

## VII.  Decision

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED

Date: August 3, 2010                               s/ Nancy A. Vecchiarelli
                                                                  U.S. Magistrate Judge